UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
CAROLINA GUZMAN
on behalf of herself and
all other similarly situated consumers

                              Plaintiff,


         -against-



EQUIFAX INFORMATION SERVICES, LLC AND
TOYOTA MOTOR CREDIT CORPORATION

                         Defendants.

-------------------------------------------------------

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1.    Plaintiff Carolina Guzman seeks redress for the illegal practices of Equifax Information

      Services, LLC ("Equifax") and Toyota Motor Credit Corporation ("Toyota") in violation

      of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA) and the New York

      Fair Credit Reporting Act, NY CLS Gen Bus § 380, et seq. (NY FCRA as well as for relief

      from Defamation of Character.

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

4.    Defendant Equifax is a Credit Reporting Agency ("CRA") that engages in the business of

      maintaining and reporting consumer credit information.

5.    Upon information and belief, Defendant Equifax's principal place of business is located

      in Atlanta, Georgia.

6.     Defendant Toyota is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

7.     Upon information and belief, Defendant Toyota's principal place of business is located in Plano, Texas.

### Jurisdiction and Venue

8.     This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9.     All conditions precedent to the bringing of this action have been performed.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### Allegations Particular to Carolina Guzman

11.     Equifax is one of the "big three" credit reporting agencies (singular "CRA") in the United States.

12.     Equifax sells consumer reports (commonly called "credit reports") about millions of consumers annually.

13.     Equifax is regulated by the FCRA.

14.     In furtherance of these goals, the FCRA mandates that a CRA provide consumers, upon request, all the information sold about them to third parties and also provide consumers with an opportunity to review and dispute any inaccuracies in their files. See 15 U.S.C. §§ 1681g(a), 1681i(a)

15.     Specifically, each CRA is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial and in other limited circumstances. See 15 U.S.C. § 1681g(a).

16. The term "file," when used in connection with information on any consumer, means "**all** of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." See 15 U.S.C. § 1681a(g) (emphasis added).

17. Plaintiff is a consumer who is the victim of identity theft and has suffered particularized and concrete harm.

18. When Plaintiff learned of a fraudulent account that was appearing on her Equifax credit report, Plaintiff began contesting the fraud account.

19. Plaintiff Carolina Guzman disputed a Toyota Motor Credit account that appeared on her Equifax credit report directly with Equifax in or around July of 2019.

20. The Plaintiff's sister had obtained the Plaintiff's personal information and had her boyfriend open the said account in Plaintiff's name.

21. In the said July, 2019 dispute, Plaintiff advised Equifax that its credit reporting as to this alleged account was inaccurate in that the account was not opened by the Plaintiff and Plaintiff did not authorize anyone to open this account in her name.

22. It is believed and therefore averred that Equifax notified Toyota Motor Credit of the Plaintiff's disputes.

23. Plaintiff also notified Defendant Toyota Motor Credit directly of the fraud.

24. Nevertheless, Defendant Toyota failed to investigate the information properly and failed to report the account to Equifax as fraudulent.  See Whitesides v. Equifax Credit Info. Servs., 125 F. Supp. 2d 807 (W.D. La. 2000). (allowing defamation, negligence, and FCRA claims to go forward against card issuer that continued to report negative information and failed to delete misinformation after being informed of identity theft)

25.     Toyota further failed to investigate the information properly and continued to send bills to the perpetrator's address with accrued finance and late charges on the fraudulent account.

26.     Toyota continued to report the account such that Plaintiff's credit report began showing derogatory remarks, including "Charge Off" on the Toyota Motor Credit account.

27.     After the Plaintiff's July, 2019 dispute, Equifax had notified Plaintiff that it had initiated an investigation into the said dispute.

28.     Equifax thereafter claimed that its investigations had "verified that this item belongs to you" and that the Toyota Motor Credit Corporation account information would remain on Plaintiff's credit report. (see attached Exhibit A)

29.     Equifax's investigation did not resolve the dispute and Plaintiff subsequently filed a statement of dispute with Equifax on or about September 19, 2019. (See Exhibit B)

30.     Section 1681i(c) of the FCRA provides: "Whenever a statement of a dispute is filed . . . the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof."

31.     Plaintiff obtained her consumer credit report from Equifax on or about in November of 2019 and found that Defendant Equifax had not included Plaintiff's statement of dispute in the credit report.

32.     15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

33.     Section 1681i(a) outlines the reinvestigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

34.    Section 1681i(b), in turn, permits the consumer to file a "statement of dispute" with the CRA in the event that the reinvestigation fails to resolve the dispute.

35.    Finally, Section 1681i(c) requires any consumer report produced subsequent to the filing of the statement of dispute to clearly note the dispute "and provide either the consumer's statement or a clear and accurate codification or summary thereof."

36.    Subsequent to Equifax's receipt of the Plaintiff's statement of dispute, Equifax issued consumer reports without in any way indicating to the users of the reports that certain information contained therein was disputed by Plaintiff and failed to include a copy of Plaintiff's statement of dispute.

37.    Equifax intentionally failed to include the statement of dispute with later copies of the Plaintiff's consumer reports.

38.    Plaintiff's September 19, 2019 "Statement of Dispute" letter, sent in response to Defendant's reinvestigation results constitutes a "statement of dispute" under 15 U.S.C. § 1681i(b).

39.    The "Statement of Dispute" letter was sent after Plaintiff's request for a reinvestigation yielded no change in the status of the account on Plaintiff's credit report.  This is precisely the process that § 1681i requires.

40.    Plaintiff clearly provided sufficient detail in her September 19, 2019 "Statement of Dispute" letter to put Defendants on notice as to the nature of the dispute.

41.    The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

42.    Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified the Defendant of the said dispute.

43.    Despite having furnished information from Toyota and the dispute from the Plaintiff, Equifax has completely abdicated its obligations under federal and state law and has instead chosen to merely "parrot" whatever its customer, Toyota has chosen to say.[1]

44.    Defendant, Toyota has promised through its subscriber agreement or contracts to accurately update accounts but Toyota has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit report.

45.    The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

46.    The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing Gorman v. Experian; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

"imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute and correct any inaccuracies. *Id*.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that Citibank continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with Experian. Accordingly, he has stated a valid claim under the FCRA.)

47.    It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as

required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

48.     However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[2]

49.     These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

50.     Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

51.     As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

merely showing that the furnisher did not comply with one of its duties will not establish

liability.

52.    Defendant Equifax's subsequent reinvestigation of the item failed to resolve the dispute

so the Plaintiff filed a statement of dispute with Equifax and Equifax failed to include the

statement of dispute with later copies of the Plaintiff's consumer report.[3]

53.    Defendant Toyota has promised through its subscriber agreements or contracts to

accurately update accounts but Toyota has nonetheless willfully, maliciously, recklessly,

wantonly, and/or negligently failed to follow this requirement as well as the requirements

---

[3] See Cushman v. TransUnion Corp., 115 F.3d 220, 225 (3rd Cir. 1997) (holding that "in order to fulfill its obligation under section 1681i(a) 'a credit reporting agency may be required, in certain [*16] circumstances, to verify the accuracy of its initial source of information.'" (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994)); Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010) ("Trans Union's failure to properly reinvestigate *Dixon-Rollins's* dispute was not an isolated incident. Indeed, it has repeatedly failed to carry out its statutory duty despite the rejection of the same argument it now repeats and admonishments that its reinvestigations were deficient. In 1997, the Third Circuit instructed Trans Union that it may not just repeat information it receives from the original source, but must do more to verify the credit information. *Cushman*, 115 F.3d at 225**. Since *Cushman* was decided, Trans Union has been repeatedly warned of its statutorily required obligation in conducting a reinvestigation,** *see e.g., Krajewski*, 557 F. Supp. 2d at 616; *Crane*, 282 F. Supp. 2d at 320; *Lawrence*, 296 F. Supp. 2d at 589; *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083 (D. Or. 2007) (**Trans Union must do more than parrot information received by original source**); *Lambert v. Beneficial Mortgage Corp.*, No 05-5468, 2007 U.S. Dist. LEXIS 33119, 2007 WL 1309542, at *2 (W.D. Wash. May 4, 2007) (in certain circumstances a consumer reporting agency may need to verify the accuracy of its initial source of information) (citations omitted). *See, e.g., Mullins v. Equifax Info. Servs., LLC*, No. 05-888, 2007 U.S. Dist. LEXIS 62912, 2007 WL 2471080, at *7 n. 11 (E.D. Va. Aug. 27, 2007). Thus, **because Trans Union has been warned of its inadequate reinvestigation practices in prior cases, it may be considered a repeat FCRA offender**. *See Willow Inn, Inc., v. Public Serv. Mut. Ins. Co*., 399 F.3d 224, 232 (3rd Cir. 2005) (recidivist behavior relates to defendant's conduct as to non-parties.") (emphasis added); see also Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) ("In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers."). The court in *Cushman* noted that to only require the credit reporting agency to go to the furnisher of information would replicate the requirements of section 1681e(b), and such a reading would render the two sections largely duplicative of each other. Id. Receiving notification of a dispute from a customer shifts the responsibility of reinvestigation onto the credit reporting agency, and the statutory responsibility imposed on the credit report agency "**must consist of something more than merely parroting information received from other sources...**Given the standard articulated in *Cushman* and Experian's claimed sole reliance on the information it received from HSBC, a jury could conclude that Experian did not reinvestigate Plaintiff's dispute in accordance with the requirements of 15 U.S.C. § 1681.") (emphasis added); Carlisle v. Nat'l Commercial Services, Inc., 2016 WL 4544368, at *7 (N.D. Ga. July 22, 2016), adopted, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) (when consumer disputes and CRA conducts cursory investigation, reporting of same dispute information violates § 1681e(b)); Lazarre v. JP Morgan Chase Bank (Lazarre II), 780 F. Supp. 2d 1330 (S.D. Fla. 2011) (violation of § 1681i(a) logically entails violation of § 1681e(b); CRA that conducts unreasonably cursory reinvestigations would not be following reasonable procedures to ensure maximum possible accuracy); Burke v. Experian Info. Serv., 2011 WL 1085874, at *7 (E.D. Va. Mar. 18, 2011) (CRA could be liable for § 1681e(b) violation for failing to conduct reasonable investigation); Campbell v. Experian Info. Solutions, Inc., 2009 WL 3834125 (W.D. Mo. Nov. 13, 2009); Wilson v. CoreLogic Saferent, LLC, No. 14-CV-2477 (JPO), 2017 U.S. Dist. LEXIS 162928, at *8 (S.D.N.Y. Sep. 29, 2017) ("**Whether or not the credit reporting agency followed reasonable procedures 'will be a jury question in the overwhelming majority of cases.'**" Id. (quoting *Gorman v. Experian Info. Solutions, Inc.*, No. 07 Civ. 1846, 2008 U.S. Dist. LEXIS 94083, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)); see also Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001) (Because summary judgment is not appropriate unless the reasonableness of the CRA's procedures is "beyond question," reasonableness "is treated as a factual question even when the underlying facts are undisputed.") (emphasis added)

set forth under the FCRA and NY FCRA, which has resulted in the intended consequences of this information remaining on Plaintiff's credit reports.

54.    Inaccurate information was included in the Plaintiff's credit report.

55.    The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[4]

56.    The Plaintiff suffered injury.

57.    The consumer's injury was caused by the inclusion of the inaccurate entry.

58.    At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

59.    At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

60.    Discovery of the violations brought forth herein occurred in the months July through November of 2019 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

---

[4] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source— which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

## CLASS ACTION ALLEGATIONS

61.    When a consumer notifies a debt collector that the consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file" the debt collector must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A). As part of the investigation, the debt collector must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer…." 15 U.S.C. § 1681i(a)(2)(A).

62.    If a consumer disputes an account that appears on his or her credit, the debt collector must investigate to determine whether the account pertains to that consumer and should be part of that consumer's credit history. As part of the investigation, the debt collector must notify the source of the disputed account about the consumer's dispute and provide the source with all the relevant information provided by the consumer. Alternatively, the debt collector can delete the derogatory information.

63.    Defendant Equifax has long been aware of its obligations to properly investigate consumer disputes. It had the benefit of plain, unambiguous statutory language requiring a reasonable investigation of "the completeness or accuracy of **any item** of information contained in a consumer's file" that is disputed by that consumer. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

64.    The Eleventh Circuit Court of Appeals has held that a consumer reporting agency like the Defendant violates section 1681i(a)(1) if it fails to do a reasonable reinvestigation when a

consumer disputes "information contained in his file." Collins v. Experian Info. Sol's, Inc., 775, F.3d 1330, 1335 (11th Cir. 2015) ("[a] file is simply the information retained by the consumer reporting agency.").

65.    Other courts of appeals have for many years also instructed CRAs to reinvestigate any item that it reports and that a consumer disputes, regardless of the context. See Cortez v. Trans Union, LLC, 617 F.3d 688, 711-13 (3d Cir. 2010) (OFAC terrorist alerts that CRA keeps off site with another company but placed on its credit reports are in the consumer file and must be reinvestigated); Morris v. Equifax Info. Serv's, LLC, 457 F.3d 460, 466-68 (5th Cir. 2006) (Equifax must reinvestigate store charge account that is on file kept by one of Equifax's affiliates but which can be sold by Equifax in its credit reports); Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986); Bryant v. TRW, Inc., 689 F.2d 72 (6th Cir. 1982); Dennis v. BEH-1, LLC, 520 F.3d 1067 (9th Cir. 2008); Steed v. Equifax Info. Serv's, LLC, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016).

66.    Defendant's failure to investigate disputed account information is a result of its standard policies and practices adopted in reckless disregard of consumers' rights under the FCRA.

67.    Plaintiff brings this class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, based on Defendant's failure to comply with 15 U.S.C. § 1681i(a)(1) and (2).

68.    This cause of action is brought on behalf of Plaintiff and the members of a class.

69.    The class consists of all persons whom Defendants' records reflect resided in the State of New York, who notified Equifax of a dispute of an account appearing in their Equifax credit files and to whom Equifax failed to include the statement of dispute in subsequent

credit reports, during the period beginning two years prior to the filing of this action and through the time of judgment.

70.    The class is so numerous that joinder of all members is impracticable. Although the precise number of class members is known only to Equifax, Equifax has represented that it receives approximately 10,000 disputes a day, amounting to millions of disputes each year. Accordingly, Plaintiff estimates that each class has thousands of members.

71.    There are questions of law and fact common to the classes that predominate over any questions affecting only individual class members. The principal questions are whether Equifax violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it; and whether the violations were willful.

72.    Plaintiff's claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theory: a dispute to Experian Information Solutions, Inc. regarding a dispute, which Experian Information Solutions, Inc. did not investigate or delete as required by 15 U.S.C. § 1681i(a)(1) and (2). Plaintiff received results of his disputes from Equifax with standard form language. Plaintiff's claim is typical of the two-year class because he made his dispute within two years.

73.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter and have retained counsel experienced in handling class actions and claims under the FCRA. Neither Plaintiff nor his counsel has any interests that might cause them not to vigorously pursue these claims.

74.    This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient

adjudication of this controversy. Equifax's conduct described in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Equifax, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Equifax's practices.  Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

75. This action should be maintained as a class action because the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the party opposing the class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of class members not parties to the adjudications or substantially impair or impede their ability to protect their rights.

### AS AND FOR A FIRST CAUSE OF ACTION

*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

### Failure to Timely Delete Fraudulent Accounts

76. At all times mentioned in this Complaint, Equifax was a "consumer reporting agency," as referred to in 15 U.S.C. § 1681a(e).

77. When Plaintiff learned of multiple fraudulent accounts that were appearing on her Equifax report, Plaintiff began contesting the fraud accounts.

78. Plaintiff had given Equifax notice of the dispute over the fraudulent auto loan and the

existence of the fraudulent account and the existence of dispute over the reporting of the account.

79.    Plaintiff is informed and believes that Equifax did not fully and timely given notice to the furnisher Defendant Toyota within five days of the time Plaintiff gave notice to the credit reporting agencies as required by 15 U.S.C. § 1681i (a)(2).

80.    Defendants had notice of the identity theft problems from Plaintiff and local police authorities, and had notice occurring by virtue of their own investigation and during their communication with the furnisher Defendant.

81.    Despite repeated notice of the fraudulent credit card issuance, the continuing existence of the fraudulent accounts, the reporting of the fraudulent accounts, the existence of dispute over the reporting of the accounts and the identified risk of further account issuance based on the use and/or reporting of the fraudulent address or any reporting of the fraudulent accounts, Defendants:

    a)    failed to timely delete all reference to the fraudulent accounts;

    b)    failed to prevent and allowed furnisher Defendant Toyota to report the false account information and included the false account information in the credit file available concerning the Plaintiff;

    c)    after deleting some of the fraudulent account references, failed to block or otherwise prevent and allowed furnisher Defendant Toyota to report the false information again and included some such false reports in the credit file available concerning the Plaintiff;

    d)    after ultimately deleting the fraudulent account references, failed to block or otherwise prevent and allowed furnisher Defendant Toyota to report the false

account information again and included some such subsequent reports in the credit file available concerning the Plaintiff;

e)  after deleting some of the fraudulent account references, failed to block or otherwise prevent and allowed furnisher Defendant Toyota to report the false account information with modification indicating the account had been closed rather than removing the information entry entirely or reporting that the account had been fraudulently opened and included some such subsequent reports in the credit file available concerning the Plaintiff;

f)  failed to themselves, conduct meaningful investigation of the false information and disputes identified by the Plaintiff;

g)  failed to conduct meaningful investigation to identify any false account references being reported to the credit reporting agencies similar or related to the disputes identified by Plaintiff and failed to give notice to Plaintiff of the additional items for which correction was necessary and any information or request needed from Plaintiff prior to blocking such additional false information;

h)  failed to conduct meaningful investigation as to the quality of response of the credit information furnisher Defendant to the inquiries of the credit reporting agencies regarding the false information and disputes identified by Plaintiff and instead deferred to the inadequate investigation and responses by the credit information furnishers despite knowledge of the probability of lack of thorough investigation upon initial dispute notice;

i)  failed to properly acknowledge and process the notice of the dispute given by

Plaintiff and failed to provide reasonable notice of the results of investigation of the dispute.

82. In such manner and otherwise the credit agency defendants negligently failed to comply with the requirements of Fair Credit Reporting Act (FCRA) including but not limited to:

   a) failing to comply with the requirements in 15 USC § 1681e(b);

   b) failing to comply with the requirements in 15 USC § 1681i;

   c) failing to comply with the requirements in 15 USC § 1681b(a);

   d) failing to comply with the requirements in 15 USC § 1681g;

   e) failing to comply with the requirements of 15 USC § 1681n; and

   f) failing to comply with the requirements of 15 USC §1681o.

83. Defendants Equifax and Toyota failed to properly reinvestigate Plaintiff's disputes, performed perfunctory and essentially useless investigations and/or reinvestigation resulting in their incorrect verification of the false reports and continued to prepare and issue false consumer reports in violation of the Fair Credit Reporting Act. 15 U.S.C. 1681i.

84. As a proximate result of Defendants' failure to investigate and/or reinvestigate the false, derogatory credit report entries, such entries remained, and Plaintiff continued to suffer injury from the identity theft.

85. As a further proximate result of the acts alleged herein of Defendants, Plaintiff has been harmed in that Plaintiff has incurred attorney's fees and costs necessary to pursue correction of his credit record and protection from further injury and to pursue this claim, and therefore Plaintiff is entitled to his reasonable attorney's fees and costs incurred in prosecution of this claim as allowed pursuant to 15 U.S.C. §1681o(a), 15 USC §1681n(a) or otherwise allowed before this court.

86.    The acts alleged herein of Defendants were willful and malicious and were done with fraud or oppression, and in reckless disregard of Plaintiff's rights and were intended to or were known likely to oppress and cause injury to Plaintiff and were done within the course and scope of the Defendants' employees' employment and/or managerial authority or pursuant to company policy.

## AS AND FOR A SECOND CAUSE OF ACTION

*Violation of the Fair Credit Reporting Act by Credit Information Furnishers, (15 U.S.C. 1681)*

**Defendant Toyota's failure to notify CRA's of fraudulent credit accounts**

87.    At all times mentioned in this Complaint, Toyota was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA. Defendants have negligently and/or willfully violated various provisions of the Fair Credit Reporting Act and other federal and state laws and are thereby liable unto Plaintiff.

88.    Plaintiff was a victim of repeated fraudulent issuance of credit to an imposter by Defendant Toyota herein.

89.    Plaintiff is informed and believes and thereon alleges that at least one if not all of the credit reporting agencies gave notice of the disputes to the furnisher Defendant Toyota as required under the FCRA.

90.    Plaintiff is further informed and believes and thereon alleges that at least one if not all of the credit reporting agencies gave notice of the disputes to furnisher Defendant Toyota as required under the FCRA in that the furnisher Defendant Toyota acted on the notice and at least partially changed the report information it furnished.

91.    The CRA, Equifax reported to Plaintiff that it had given notice of the dispute to the information furnisher.

92.    The furnisher Defendant, Toyota, had notice of the dispute by virtue of its own

investigation seeking information from the credit report file after the credit reporting agencies has already put a fraud alert warning in the file.

93. Plaintiff herself, gave notice of the disputes directly to Defendant Toyota.

94. Toyota failed to conduct an investigation with respect to the disputed information.

95. Toyota failed to review relevant information provided by Equifax.

96. Had Toyota conducted a reasonable investigation, Toyota would have discovered that Plaintiff fell victim to identify theft, and promptly modified those items of information, deleted those items of information or permanently blocked the reporting of that item of information.

97. Toyota failed to promptly delete that item of information; or permanently block the reporting of that item of information.

98. Toyota furnished information that purports to relate to Plaintiff to Equifax after Plaintiff submitted an identity theft report stating that information maintained by Toyota that purports to relate to Plaintiff resulted from identity theft.

99. Under their subscriber contracts, Defendant Toyota owed a number of duties, including the duty to report truthful and accurate information about its customers and about others whom it reported or accessed data.

100. Defendant Toyota received re-transmitted disputes from the various consumer reporting agencies, who had received Plaintiff's disputes, and the agencies sent the disputes to Defendant Toyota. Nevertheless, Defendant Toyota failed in its duties to conduct reasonable reinvestigation into the disputes and subsequently demanded that the false information be retained in Plaintiff's credit records and files held and re-reported by the various agencies.

101.    Defendant Toyota was aware or reasonably should have been aware that its reportings and activities would damage Plaintiff and her ability to enjoy life and utilize the credit rating and reputation property rights he secured by honoring her obligations to creditors.

102.    Defendant Toyota recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning the Plaintiff with reckless disregard for the truth.

103.    Defendant Toyota's publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused humiliation, emotional distress, mental anguish and physical injury.

104.    In doing the acts alleged herein, Defendant Toyota willfully, intentionally and/or recklessly failed to comply with the requirements of FCRA, including but not limited to the requirements within 15 U.S.C. § 1681n.

105.    As a further proximate result of the acts alleged herein of Defendant Toyota, as alleged above, Plaintiff has been harmed in that Plaintiff has incurred attorney's fees and costs necessary to pursue correction of his credit record and protection from further injury and to pursue this claim, and therefore Plaintiff is entitled to his reasonable attorney's fees and costs incurred in prosecution of this claim as allowed pursuant to 15 U.S.C. §§ 1681o(a) and 1681n(a) or otherwise allowed before this court.

106.    The acts alleged herein of Toyota was willful and malicious and was done with fraud or oppression, and in reckless disregard of Plaintiff's rights and was intended to or was known likely to oppress and cause injury to Plaintiff and was done within the course and scope of the Toyota's employees' employment and/or managerial authority or pursuant to company policy. Plaintiff is therefore entitled to an award of punitive damages.

## LIABILITY AND DAMAGES

107.   Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

108.   At all times mentioned in this Complaint, various employees and/or agents of Defendants were acting as agents of Defendants and therefore Defendants were liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

109.   At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants are liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendants and their agents or employees were engaged in a common business venture and were acting jointly and in concert.

110.   Plaintiff believes and asserts that she is entitled to $1,000.00 in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

111.   Plaintiff believes and asserts that Defendants' actions were willful and intentional.

112.   Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

113.   Plaintiff requests punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

114.   For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

115.   Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

116.   Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A THIRD CAUSE OF ACTION

### *(New York Fair Credit Reporting Act)*

117.  Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

118.  Defendants Equifax and Toyota failed to delete information found to be inaccurate, reinserted the information without following the NY FCRA, or failed to properly investigate Plaintiff's disputes.

119.  Defendants Equifax and Toyota failed to promptly re-investigate and record the current status of the disputed information and failed to promptly notify the consumer of the result of their investigation, their decision on the status of the information, and his rights pursuant to this section in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(a).

120.  Defendants Equifax and Toyota failed to clearly note in all subsequent consumer reports that the account in question is disputed by the consumer in violation of NY FCRA, N.Y. Gen. Bus. Law § 380-f(c)(3).

121.  As a result of the above violations of the N.Y. FCRA, Equifax and Toyota are liable to Plaintiff for actual damages, punitive damages, statutory damages, attorney's fees and costs.

## AS AND FOR A FOURTH CAUSE OF ACTION

### *(Negligence; Negligent Issuance of Credit; Negligent Enablement of Identity Theft; Negligent Publication of False Information Regarding Financial Matters; Negligent Investigation and Handling of Credit Account Fraud - against all Defendants)*

122.  Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

123.  Defendants owed duties of reasonable care to Plaintiff, including having a pre-existing contractual credit relationship with Plaintiff, owing Plaintiff a duty of care with regard to

the contractual credit relationship being created by the issuance of the credit cards, and due to the foreseeable impact on Plaintiff of any contractual credit relationship established with the identity thief.

124.   Defendant Toyota and its associated business entities and business entities supporting them solicited, processed applications and granted false credit in Plaintiff's name to an unrelated third party, failed to reasonably investigate and terminate the false credit, created and passed on adverse credit information about Plaintiff to the credit agencies and others and failed to reasonable correct the false credit information and reporting.

125.   Defendants had a duty to Plaintiff to not benefit themselves at unnecessary risk to Plaintiff by negligently issuing credit without reasonable investigation.

126.   The bank auto-loan issuing Defendant, Toyota, and its associated business entities, breached such duty to act reasonable toward Plaintiff by the acts alleged herein of processing the credit application of the identity theft perpetrator without reasonable effort to verify the identity of the applicant.

127.   Defendants breached their duty to Plaintiff by negligently failing to institute practices and policies to minimize the risk of such negligent issuance of credit.

128.   Defendants, in doing the acts alleged herein, including the processing of credit applications without reasonable investigation, and failing to provide warnings as to the fraudulent address, negligently enabled the identity thief in the perpetration of the identity theft.

129.   Defendants breached such duty to Plaintiff in that Defendants engaged in a consistent policy and pattern of practice of benefitting themselves by negligently issuing credit without reasonable investigation despite the unreasonable risk to Plaintiff and others.

130.   Defendants Equifax and Toyota, prepared, issued and distributed and failed to correct consumer credit reports concerning Plaintiff which included inaccurate information, including information related to accounts regarding the Toyota auto-loan.

131.   Defendants and their employees had a duty to act reasonably as to Plaintiff in the course of the issuance of credit, investigation and credit reporting conduct and fraud actions alleged herein and to protect Plaintiff and see that he was safe from harm by Defendants.

132.   Defendants failed to exercise reasonable care and prudence in the reporting and collection of the disputed account, each subsequent reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, and attempted collection of the subject accounts, all made the subject of this lawsuit, and which consequently caused damaged to Plaintiff.

133.   The conduct of Defendants and their employees as alleged above was negligent, careless and wrongful. Management and supervisors of Defendants' employees conducted, confirmed and ratified the negligent acts of Defendants and their employees with a careless disregard for the effects of their conduct on Plaintiff and others.

134.   In performing the acts alleged above, and generally in relations, interactions and communications with Plaintiff Defendants and their employees failed to exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances, thereby proximately causing the damages alleged in this complaint.

135.   Defendants and their employees breached their duty to Plaintiff by the acts and omissions herein alleged.  Said acts and omissions were done negligently and Defendants knew, or should have known, that such acts and omissions would injure Plaintiff.

136.   Defendants' acts alleged herein had the effect of negligently inflicting severe emotional

distress upon Plaintiff.

137.    Defendants were aware or reasonably should have been aware that the acts would have

such effect of inflicting severe emotional distress.

138.    The acts alleged herein of Defendants proximately caused Plaintiff to invasion of privacy,

humiliation, mental anguish, and emotional distress and losses as set forth herein or as to

be established at trial.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and

that this Court enter judgment in her favor and against the Defendants and award damages as

follows:

    a)    Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    b)    Punitive damages pursuant to 15 U.S.C. § 1681n;

    c)    Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    d)    Attorney's fees pursuant to N.Y. Gen. Bus. Law § 380-m; and

    e)    Any other relief that this Court deems appropriate and just under the

    circumstances.

Dated: Woodmere, New York
December 3, 2019

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney at Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein (AF-9508)

# EXHIBIT A

**How should I read my dispute results?**

To better assist you with understanding the results of your dispute, please review the information below:

* If an item states "**Deleted**", we have removed it from your credit report and taken steps so it does not reappear.
* If an item states "**Verified as Reported**", the reporting company has certified it is reporting accurately.
* If an item states "**Updated**", we have updated one or more fields on the item based on information received from the reporting company.

Updated disputed account information only: **The information you disputed has been updated.**

Updated disputed account information. Additional account information was also updated: **The information you disputed has been updated as well as other information on this item.**

Disputed information accurate. Updated account information unrelated to the dispute: **The information you disputed has been verified as accurate, however, information unrelated to your dispute has been updated.**

Consumer's dispute not specific. Consumer Information verified. Account information updated: **Information on your report has been updated.**

---

*The Results Of Our Reinvestigation*

---

*Credit Account Information*
*(For your security, the last 4 digits of account number(s) have been replaced by *) (This section includes open and closed accounts reported by credit grantors)*

| *Account History Status Code Descriptions* | 1 : 30-59 Days Past Due<br>2 : 60-89 Days Past Due<br>3 : 90-119 Days Past Due<br>4 : 120-149 Days Past Due | 5 : 150-179 Days Past Due<br>6 : 180 or More Days Past Due<br>G : Collection Account<br>H : Foreclosure | J : Voluntary Surrender<br>K : Repossession<br>L : Charge Off |

**>>> Information on your report has been updated. Account # -_____7244*  The results are:** We verified that this item belongs to you. This account has been updated. Additional information has been provided from the original source regarding this item. THE FOLLOWING FIELDS HAVE BEEN MODIFIED: *TERMS DURATION *ADDITIONAL INFORMATION *ACCOUNT HISTORY. If you have additional questions about this item please contact: ***Toyota Financial Services, Credit Dispute Research TE, PO Box 9786, Cedar Rapids  IA  52409-0004***

**Toyota Motor Credit Corp**   *Credit Dispute Research Te PO Box 9786 Cedar Rapids IA 52409-0004*

| Account Number | | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | | Months Revd | Activity Designator | | Creditor Classification |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 7244* | | 03/25/2014 | $0 | $0 | | Monthly | | 49 | | | |

| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Payment | Actual Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date of Last Activity | Date Maj. Del, 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/08/2019 | $23,951 | $23,951 | 08/2016 | $0 | $0 | 09/2016 | | | $23,951 | | $0 | | |

| Status | Type of Account | Type of Loan | Whose Account | Portfolio Indicator | Portfolio Status |
|---|---|---|---|---|---|
| Charge Off | Installment | Auto | Joint Account | | |

ADDITIONAL INFORMATION:

*Consumer Disputes This Account*

Consumer Disputes After Resolution

Charged Off Account

*Auto*

### Account History with Status Codes

| 05/2019 | 04/2019 | 03/2019 | 02/2019 | 01/2019 | 12/2018 | 11/2018 | 10/2018 | 09/2018 | 08/2018 | 07/2018 | 06/2018 | 05/2018 | 04/2018 | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L | L |

| 08/2017 | 07/2017 | 06/2017 | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | 12/2016 | 11/2016 | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 01/2016 | 12/2015 | 07/2015 | 06/2015 | 02/2015 | 01/2015 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| L | L | L | L | L | L | 6 | 5 | 4 | 3 | 2 | 1 | 2 | 1 | 2 | 1 | 2 | 2 | 1 | 1 | 4 |

| 12/2014 | 11/2014 | 10/2014 | 07/2014 | 05/2014 |
|---|---|---|---|---|
| 2 | 2 | 1 | 2 | 1 |

#### Historical Account Information

| | Balance | Scheduled Payment Amount | Actual Payment Amount | Date of Last Payment | High Credit | Credit Limit | Amount Past Due | Type of Loan | | Activity Designator |
|---|---|---|---|---|---|---|---|---|---|---|
| 06/19 | No Data Available | | | | | | | | | |
| 05/19 | $23,951 | | | 8/1/2016 | | | $23,951 | Auto | | |

ADDITIONAL INFORMATION:

Consumer Disputes After Resolution

Charged Off Account

Fixed Rate

c

# EXHIBIT B

**9/20/2019**

**Carolina Guzman**

**Statement of dispute**:

I am a victim of identity theft. The Toyota Motor Credit account # XXXXXXXXXX was opened by sister's boyfriend without my permission.

As per my rights under 15 USC 1681i(b) of the Fair Credit Reporting Act, I dispute the Toyota account that is on my Equifax report